**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| STRIKE 3 HOLDINGS, LLC, | § § § | Civil Action No. <u>1:18-cv-01506-AJT-MSN</u> |
| Plaintiff, | § § | |
| v. | § § | |
| JOHN DOE subscriber assigned IP Address 108.18.111.167, | § § § | Hon. Anthony J. Trenga Hon. Michael S. Nachmanoff |
| Defendant. | § § | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO QUASH, OR, IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER**

**Table of Contents**

TABLE OF CONTENTS………………………………………………………………...……..1

BRIEF IN SUPPORT OF JOHN DOE'S MOTION TO QUASH OR VACATE .......................... 2

    Plaintiff Fails To Connect Subscriber to Infringement ............................................................... 2

    Plaintiff Conflates Subscriber and Infringer ............................................................................... 3

    Plaintiff Overlooks Household Size............................................................................................ 3

    John Doe Subscriber Faces an Undue Burden ............................................................................ 4

    Plaintiff Does Not Show "Good Cause" for a Subpoena Because It Has Not Alleged "Something More" to Identify the Infringer .............................................................................. 5

    The Ninth Circuit Requires "Something More" Than Mere Conclusions ................................. 6

    Other Courts have Dismissed Similar Subpoena Requests Because the Motions Fail to Establish "Something More" Than "Mere Conclusions" ........................................................... 8

1

Plaintiff Does Not Overcome Privacy Concerns ........................................................................ 9

Plaintiff Has Not Attached Copyright Registrations ................................................................ 10

Similar Litigation Fails To Show Good Cause For An Expedited Subpoena ........................... 11

Plaintiff Has Not Overcome The Motion To Dismiss Standard ............................................... 11

BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER ........... 11

## BRIEF IN SUPPORT OF JOHN DOE'S MOTION TO QUASH OR VACATE

### Plaintiff Fails To Connect Subscriber to Infringement

Plaintiff's case has a fatal flaw with myriad consequences. Plaintiff's Complaint (ECF No. 1) and Subpoena Motion (ECF No. 4-5) falsely equate an ISP Subscriber with an infringing Defendant in order to convince the Court that good cause exists to subpoena Subscriber's identity. Courts around the country (*see attached* Judicial Notice, Ex A) are catching on to the lack of a connection between the IP address allegedly used to commit copyright infringement and actual knowledge of which person, if any, is the accused infringer. John Doe respectfully requests that this Court adopt a similar position here and require "something more" from Plaintiff before allowing it to receive a John Doe Subscriber's identity. *Cobbler Nevada, infra.*

Plaintiff files copyright infringement claims, like this one, *en-masse*, relying on mere statistical probability that a likely infringer comes forth, willing to pursue a settlement. "This method is famously flawed . . . ." says Judge Lamberth, about Strike 3 Holdings, denying a similar ISP subpoena:

> . . . virtual private networks and onion routing spoof IP addresses (for good and ill); routers and other devices are unsecured; malware cracks passwords and opens backdoors; multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; a geolocation service might randomly assign addresses to some

general location if it cannot more specifically identify another.

*Strike 3 Holdings*, 18-1425 (D.C. District 2018) *infra.* (Notice of Appeal filed by Strike 3 Holdings). In Judge Lamberth's Opinion, Strike 3 Holdings investigatory methods are "famously flawed" because they fail to account for the situation behind the Subscriber's internet connection:

> Simply put, inferring the person who pays the cable bill illegally downloaded a specific file is even less trustworthy than inferring they watched a specific TV show. *Id.* at 1-2.

### **Plaintiff Conflates Subscriber and Infringer**

John Doe wishes to clarify how it is referring to the following logically separate entities:

a. The <u>Subscriber</u> is the person who pays for the internet connection;
b. The alleged <u>infringer</u> is the person Plaintiff claims infringed on its copyrighted works;
c. The <u>Defendant</u> is the alleged infringer;
d. <u>John Doe</u> is the internet Subscriber in this instant action.

Plaintiff's justification for the expedited subpoena relies entirely on the assumption that Subscriber, Infringer, Defendant, and John Doe, are always the same person.

### **Plaintiff Overlooks Household Size**

The vast majority of American households, 81.8%, have an internet connection, and Virginia's rate is slightly above average at 83.4%, according to the U.S. Census Bureau. Ryan, Camille, "*Computer and Internet Use in the United States: 2016*," American Community Survey Reports, ACS-39, U.S. Census Bureau, Washington, DC, 2017. Only 28% of U.S. households are single person households. U.S. Census Bureau, *Current Population Survey*, March and Annual Social and Economic Supplements, November 2018. *See attached* Judicial Notice, Ex A. People within the same household often share an IP address, and, in a majority of circumstances, there are multiple potential users associated with any IP address. *See* Census Bureau *supra*. Even single person households can still share their internet connection, knowingly or unknowingly,

with others (e.g., overnight guests, friends, parties and other social events), and even associates of those people unknown to John Doe.

Plaintiff makes allegations of ongoing theft of its works by Defendant (Complaint ¶¶ 1-5) and that "Defendant's name and address can be provided by Defendant's Internet Service Provider." (Complaint ¶ 12). Plaintiff asserts that it has good cause for its subpoena, because "This subpoena will only demand the true name and address of Defendant." *Brief in Support* (ECF No. 5 at 2).

But the subpoena is not demanding Defendant's name and address – rather the Subscriber's – and Plaintiff has not established any legal connection whatsoever between Subscriber and the alleged infringement. Plaintiff equates Subscriber to Defendant and claims that sending a subpoena to Subscriber's ISP will reveal the alleged infringer. The caption further equates the two: "JOHN DOE subscriber assigned IP address 108.18.111.167, Defendant." (ECF No. 1).

### John Doe Subscriber Faces an Undue Burden

John Doe Subscriber swears its innocence under penalty of perjury. *See attached* Affidavit of John Doe. John Doe has received a notice of the case and is burdened with preparing a legal response in its defense. John Doe's burden is undue because it is the Subscriber (and not the Infringer) and Plaintiff has not met its burden of establishing the likelihood of the subpoena revealing the alleged infringer's identity. *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 3:16-MC-1 (E.D. Va. 2016) (ECF No. 18 at 13). Nor has it established good cause to subpoena subscriber's identity by alleging "mere conclusions" (*Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)) against an Infringer known only by an IP address.

Plaintiff overlooks the likelihood of whether an internet Subscriber is not the infringer. Throughout its Complaint and Brief in Support, Plaintiff interchanges "Subscriber" and

4

"Defendant" numerous times. (ECF Nos. 1, 5). This creates the false impression that Plaintiff already knows enough about the alleged infringer to connect the infringement to the Subscriber. Plaintiff has not considered whether Subscriber is the infringer or whether the infringer is someone else. Plaintiff cannot even tell the court how many people it expects to find behind the internet connection.

Plaintiff only alleges knowledge of the infringement through observation of file-sharing networks where infringement was identified only through an IP address. *Brief in Support* (ECF No. 5 at 8): ("Plaintiff has a limited view into Defendant's true identity, only having access to the offending IP address.")

This is a fatal flaw. Even if Plaintiff's investigatory methods are otherwise sound, it still lacks sufficient actual knowledge to say which person is the Defendant and whose identity it means to subpoena.

Plaintiff alleges that the only way it can vindicate its rights is to subpoena the Subscriber's identity through its ISP. (ECF Nos. 4, 5). In support, it says that Subscriber is Defendant and that the subpoena will reveal Defendant's identity so it can be served. *Id.*

### **Plaintiff Does Not Show "Good Cause" for a Subpoena Because It Has Not Alleged "Something More" to Identify the Infringer**

In order to send a subpoena or otherwise conduct discovery prior to Rule 26(f) conference, a party must make a request by Motion. The Court has broad discretion on discovery. It is generally asserted that a 'good cause' standard is appropriate for an expedited discovery request.

In the Second Circuit case of *Arista Records LLC*, the Court established that a Plaintiff must show good cause to be granted a pre-Rule-26(f) subpoena. *Arista Records LLC v. Doe 3*, No. 09-0905 (2d Cir. 2010). Plaintiff, here, cited to *Arista Records LLC* for its good cause

5

standard in their Brief in Support. (ECF No. 5 at 6).

*Arista Records LLC* articulated a balancing test to weigh a Plaintiff's need for a subpoena against a John Doe Defendant's right to be anonymous: "[L]ooking to the plaintiffs showing of a prima facie claim of actionable harm; their discovery request's specificity; their alternative means to obtain the subpoenaed information; the need for the subpoenaed information to advance the claim; and the objecting party's privacy expectation." *Strike 3 Holdings, LLC., v. John Doe subscriber 73.180.154.14*, 18-1425 (D.D.C. 2018) (citing *Arista Records LLC* at 119).

Here, the Court found that "Plaintiff established [] 'good cause'" for service of a subpoena based on Plaintiff's assertions in its Complaint and Motion." (ECF Nos. 1, 4, 5, 7).

But Plaintiff's supporting assertions overlook the distinction between a Subscriber and a potential Infringer / Defendant. For example, Plaintiff claims that it has seen infringement on "Defendant's" IP address, (Complaint ¶ 5), and it needs to subpoena "Defendant's" ISP to reveal "Defendant's" identity and properly serve Defendant. (ECF No. 5, ¶ 2).

Plaintiff has not revealed that it is not sending a subpoena to "Defendant's" ISP but rather to the ISP of a Subscriber who may not be Defendant. Defendant may be a person who has used Subscriber's internet connection and not necessarily the Subscriber themselves.

Here, John Doe Subscriber asserts via Declaration under penalty of perjury that it is not the Infringer. However, because of the magnitude of Plaintiff's allegations, John Doe must proceed with its defense as if it were Defendant.

Plaintiff has alleged nothing more than mere conclusions that the infringement it alleges was committed by Subscriber and not someone else. John Doe respectfully suggests that an expedited subpoena should require something more, especially when balancing privacy interests.

### The Ninth Circuit Requires "Something More" Than Mere Conclusions

A Ninth Circuit appellate ruling, *Cobbler Nevada*, stands for the principle that good

cause has not been shown when Plaintiff only makes a mere allegation that infringement took place on an internet connection:

> [John Doe's] status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer. [. . .] A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.

*Cobbler Nevada, LLC v. Gonzalez*, No. 17-35041 at 3 (9th Cir. 2018). In *Cobbler Nevada*, a plaintiff pursuing a similar case of alleged bittorrent-based copyright infringement pursued a John Doe even though "The only facts in support of Cobbler Nevada's direct infringement claim were that Gonzales [John Doe] was "the subscriber of the IP address used to download or distribute the movie . . ." *Id.* at 5.

The Court upheld a lower-court ruling dismissing Cobbler Nevada's case without prejudice because "its independent investigation did not permit identification of 'a specific party that is likely to be the infringer.'" *Id.* at 8.

Like the Subscriber/Defendant in *Cobbler Nevada*, Plaintiff here has not made a distinction between the Subscriber and the Defendant, nor has Plaintiff alleged "something more" by connecting the alleged infringements between the IP address and an identifiable person. Instead, Plaintiff conflates the alleged infringer and the internet Subscriber in an attempt to show good cause and avoid a similar result.

Plaintiff's request is the same as the one in *Cobbler Nevada*. It requests Subscriber's identity by claiming that Subscriber is Defendant without more.

*Cobbler Nevada* stands for the principle that a mere allegation of infringement against a Defendant, without something more, does not establish good cause to uncover a Subscriber's identity.

## **Other Courts have Dismissed Similar Subpoena Requests Because the Motions Fail to Establish "Something More" Than "Mere Conclusions"**

The conflation of Subscriber with Infringer has been found to be so inherently unreliable that some courts have dismissed Strike 3 Holdings and similar cases *sua sponte*. *See attached* Judicial Notice, Ex. A.

Judge Royce Lamberth of the U.S. District Court for the District of Columbia recently denied Strike 3 Holdings a subpoena to a Subscriber's ISP on similar grounds. *Strike 3 Holdings, LLC., v. John Doe subscriber 73.180.154.14*, 18-1425 (D.C. District 2018) (A Notice of Appeal has been filed by Strike 3 Holdings). *See also attached* Judicial Notice.

Citing *Arista Records LLC*, Judge Lamberth rules that ". . . Strike 3 's request lacks the type of specificity the Second Circuit's test requires: that the request will identify a copyright infringer who can be sued." *Id.* at 5.

Judge Lamberth acknowledges that Strike 3 may be able to identify the alleged Infringer after ". . . far more intensive discovery . . ." such as examining computers and propounding written requests or depositions. *Id.* at 6.  Because Plaintiff cannot identify the infringer without additional, burdensome, and invasive, discovery, the subpoena alone "will not – and may never – identify a defendant who could be sued." *Id.* at 6.

Citing the ". . . content's aberrantly salacious nature" and ". . . the legion pitfalls associated with Strike 3's tracking and identification of infringers", the ". . . Court will not accept the risk of misidentification." *Id.* at 7. (limiting the scope of the ruling).

Other courts have also dismissed Strike 3 Holdings cases.  In New Jersey, Judge Cathy L. Waldor has Ordered Strike 3 Holdings to Show Cause why she shouldn't adopt Judge Lamberth's decision in her court. *Strike 3 Holdings, LLC., v. John Doe,* 18-cv-10619, (D.N.J. 2018).  As of this writing, a hearing is scheduled for March 12, 2019. *Id.* (ECF No. 23).

## **Plaintiff Does Not Overcome Privacy Concerns**

In Minnesota, eight Strike 3 Holdings cases were filed in March of 2018. The subpoena requests were denied.   No cases have been filed in Minnesota since.

In one of the denials, Judge Schultz wrote, "At the heart of this conflict is whether a copyright owner can use the federal judiciary to discover evidence about a potential, alleged infringer when the infringer's actual identity is unknown. *Strike 3 Holdings, LLC., v. John Doe*, 18-773 (D. Minn. Apr 30, 2018)  (ECF No. 14 at 3) (citing *In Re Charter Communications*, 393 F.3d 771 (8th Cir. 2005)).

The court continued:

> [T]he Eighth Circuit held that DMCA's subpoena provision did not apply to a "copyright owner . . . request[ing] a subpoena for an ISP which merely acts as a conduit for data transferred between two internet users." Put differently, DMCA does not apply to the facts of the instant case because Comcast, the ISP Plaintiff seeks to subpoena, is acting only as a conduit for data transferred between two internet users. *In Re Charter Communications* effectively precludes an alleged infringement victim from invoking DMCA to obtain a subpoena to identify infringers using peer-to-peer file sharing.

*Id.* at 4.  Nor could Strike 3 Holdings circumvent privacy protections by making an *ex-parte* motion for expedited discovery:

> Again, as is the case with DMCA, the conundrum here is that the information Plaintiff seeks through a Rule 45 subpoena poses a direct conflict between Plaintiff's property interest and Defendant's privacy protections afforded under federal law in the Communications Act. This direct conflict between DMCA and the Communications Act was argued by the parties in *In Re Charter Communications.* However, as the Eighth Circuit quashed the subpoena on other grounds, it never reached or resolved this issue.

*Id.* at 5.  Strike 3 Holdings was also denied a subpoena in the Southern District of California (case 18-2715, Dec 19, 2018) (ECF No. 5) on the grounds that venue is insufficiently pled. Judge Major writes:

> For the Court to grant Plaintiff's motion, Plaintiff must first identify the Doe defendant with sufficient specificity to enable the Court to determine that the Doe defendant is a real person subject to the Court's jurisdiction. *Id.* at 3. However, Plaintiff's allegation that Defendant's IP address traced to a physical address in this District is not supported by any declaration filed in support of the instant Application that would indicate, for example, who used the geolocation technology, the dates of use, and how it is probative of the physical location of the subscriber. Accordingly, no evidentiary support was provided to show that Defendant's IP address likely resolves to a physical address located in this District, and this Court cannot rely on Plaintiff's unsupported assertions regarding the use and accuracy of the geolocation technology Plaintiff contends to have applied. Therefore, the instant Application must fail because there is no reliable evidence to support Plaintiff's claim that geolocation technology identified Defendant's physical location as being subject to this Court's jurisdiction."

*Id.* at 4. Like the case before Judge Major, above, Strike 3 Holdings alleges its use of Maxmind IP address location technology in this case as well. Complaint ¶ 9.

## **Plaintiff Has Not Attached Copyright Registrations**

One of the prima facie elements required to assert a copyright claim is ownership of a valid copyright. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Last March, in 2018, Judge Hellerstein of the Southern District of New York granted a Motion to Quash a Strike 3 Holdings Subpoena because Plaintiff failed to attach the proper notices of valid copyright registration. *Strike 3 Holdings, LLC. v. John Doe*, 1:17-cv-08956, (S.D.N.Y. Mar. 8, 2018) (ECF No. 15). "The Complaint fails to provide appropriate copyright registration forms, or even list the copyrighted materials-as opposed to merely the "site" - that Defendant allegedly infringed on." *Id.* at 1. Like Judge Hellerstein's Strike 3 case, Plaintiff here merely lists numbers for copyright registrations or pending applications. Instead of titles or names, Plaintiff provides a ledger of cryptographic hash codes, listing only the "site" which the nameless title belonged to.

Because the Plaintiff failed to allege the ownership of valid copyrights, it did not "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Similar Litigation Fails To Show Good Cause For An Expedited Subpoena

Strike 3 is not the only Plaintiff using the litigation strategy. Recently, Judge Sara Ellis of the Northern District of Illinois denied a subpoena request to Malibu Media, writing "Malibu Media has not sufficiently tied Doe to the alleged infringing conduct to support a copyright claim and so dismisses the amended complaint without prejudice." *Malibu Media v. John Doe*, Civil No. 18-450, (N.D. Ill. Dec. 10, 2018) (ECF No. 37). Malibu uses the same investigator, IPP International, to record alleged infringement, as Strike 3 Holdings.

### Plaintiff Has Not Overcome The Motion To Dismiss Standard

*Ashcroft v. Iqbal* and *Bell Atlantic v. Twombly* stand for, *inter alia*, the principle that "mere conclusions[] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 665; *Twombly*, 550 U.S. at 556.

Plaintiff here is not entitled to an expedited subpoena for Subscriber's identity because it has merely concluded that Subscriber must be Infringer, that Subscriber must be Defendant, "without more." *Cobbler Nevada* at 9.

Because Plaintiff has not shown a sufficient, non-speculative connection between Subscriber and the alleged infringement, it has not shown "good cause" for an expedited subpoena.

WHEREFORE, John Doe respectfully request this Honorable Court Quash Plaintiff's subpoena to John Doe's ISP and Vacate the Order granting expedited discovery.

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

IN THE ALTERNATIVE, John Doe requests a Protective Order protecting its identity from public disclosure through the initial stages of litigation. Plaintiff is a serial litigator of online file-sharing matters, frequently filing nearly-identical lawsuits but-for the individual facts of each alleged infringement.

John Doe asserts that it is innocent of the alleged offenses. *See attached* Affidavit.

Parties' names and basic identities are normally disclosed to the public during litigation. F.R.C.P. 10(a). The Court may upon a showing of good cause, however, "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This includes allowing a party to litigate anonymously under "exceptional" circumstances, balancing the litigant's reasonable fear of "severe harm" against "the public's interest in open litigation." *Doe v. Megless*, 654 F.3d 404, 408-09 (3d Cir. 2011).

In *Malibu Media v. Doe*, Civil No. 17-1239 (D.N.J. 2017), a Defendant was accused of similar copyright infringement based on alleged online activity seen using an Internet Protocol (IP) address; that IP was sued and noticed to that Defendant in a nearly-identical fashion to the instant case.

The Defendant requested a Protective Order identical to the one requested by undersigned counsel. In analyzing the requirements of F.R.C.P 10(a), Judge Wettre found

> . . . it appropriate for defendant to litigate anonymously through the taking of discovery bearing on the viability of the claims against him. Defendant faces a risk of severe harm to his reputation stemming from potentially meritless allegations, which outweighs the public's interest in learning of defendant's identity at this early stage of the litigation.

*Malibu Media*, Civil No. 17-1239 at 4.

Judge Wettre further found that

> . . . defendants fear being stigmatized by the disclosure of their names in a publicly filing alleging that they viewed the plaintiff's pornographic films. This appears a valid concern, given that some of the films alleged to have been accessed in this case are titled "Tropical Sexcapades," "Getting Our Pussies Wet For You," "First Time Lesbian Loving," and "Suds and Sex." It is no surprise, therefore, that many of these actions settle before the Complaint is amended with the subscriber's true identity. As our District Courts have observed, it takes no leap of logic to see that defendants in these cases feel pressured to settle in order to avoid being "forever link[ed] . . . with the pornographic films at issue," regardless of whether plaintiff's claims have merit.

*Id.* at 2.

Like the *Malibu Media* case before Judge Wettre, John Doe here is claiming innocence and requesting anonymity while preparing for its responses in Court. John Doe's Affidavit ¶¶ 4-8. John Doe has a job and a family (*Id.* ¶ 9) and does not want to be "forever link[ed] . . . with the pornographic films at issue." *Malibu Media*, Civil No. 17-1239 at 2.

Finally, Judge Wettre also indicates that such a Protective Order is appropriate, even where a Defendant is not claiming factual innocence, simply because of the tenuous quantum of evidence tying an Internet Subscriber to allegations of online copyright infringement using an IP address. *Id.* at 3.

Plaintiff here has indicated that a Protective Order may be appropriate. *See* Plaintiff's Brief in Support of its Subpoena. (ECF No. 5 at 11, ¶ C).

For the reasons set forth above, John Doe respectfully requests that the Court enter an Order Quashing the Subpoena and/or Vacating the grant of its Order. In the alternative, John Doe requests a Protective Order allowing it to proceed anonymously (as to the public facing docket) through the Discovery stage of litigation.

DATED: January 27, 2019          Respectfully submitted,

         \_\_\_\_/s/_____
         Leonard J. French, Esq.
         *Pro Hac Vice*
         PA Bar: 312413
         Attorney for John Doe
         The Law Firm of Leonard J. French
         442 Hamilton St #9125
         Allentown, PA 18102
         P: (610) 466-5644
         F: (888) 262-0632
         E: ljfrench@leonardjfrench.com

           ___/s/_____
           Gerald L. Gilliard, Esq.
           Virginia State Bar No. 70094
           1629 K Street NW, Suite 300
           Washington, D.C. 20006
           Tel.: (202) 827-9753
           Fax: (202) 478-1783
           E-Mail: ggilliard@employmentlegalteam.com

           *Attorneys for Defendant*